UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONIA ELIZABETH GUTIERREZ, | Case No.  1:22-cv-01112-EPG |
| Plaintiff, | FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 1, 14). |
| Defendant. | |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability insurance benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

Plaintiff presents the following issues: 1) "The ALJ failed to properly develop the record regarding Plaintiff's chromosome abnormality and mental health impairments"; and 2) "The ALJ's credibility finding based on the Plaintiff's receipt of unemployment benefits is not based on substantial evidence." (ECF No. 12, pp. 6, 8).[1]

---

[1] The Court notes that Plaintiff challenges the ALJ's RFC assessment only to the extent that Plaintiff argues that the ALJ erred on these specific grounds.

1

1    Having reviewed the record, administrative transcript, the briefs of the parties, and the

2    applicable law, the Court finds as follows:

3    **I.     ANALYSIS**

4         **A.     Duty to Develop the Record**

5         Plaintiff first argues that the ALJ had a duty to further develop the record by ordering a

6    consultative psychological evaluation with intellectual testing because the record was ambiguous

7    and inadequate as to the severity of Plaintiff's chromosome abnormality (a genetic disorder

8    known as trisomy for distal 6P) and the extent of the functional limitations caused by Plaintiff's

9    chromosome abnormality. (ECF No. 14, pp. 6-8). The Commissioner argues that Plaintiff has

10   forfeited this challenge because Plaintiff's counsel told the ALJ at the hearing that the record was

11   complete. (ECF No. 16, pp. 9-10). Alternatively, the Commissioner argues that the ALJ had no

12   duty to develop the record. (*Id.*)

13        The Ninth Circuit has held the following concerning an ALJ's duty to develop the record:

> Critical to the fair and effective operation of the system for distributing social
> security benefits based on disability is the gathering and presentation of medical
> evidence. The burden of demonstrating a disability lies with the claimant. *Bowen
> v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). But it
> is equally clear that "the ALJ has a duty to assist in developing the record."
> *Armstrong v. Commissioner of Soc. Sec. Admin.,* 160 F.3d 587, 589 (9th Cir.1998);
> 20 C.F.R. §§ 404.1512(d)–(f); *id.* at §§ 416.912(d)–(f); *see also Sims v. Apfel,* 530
> U.S. 103, 110–11, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) ("Social Security
> proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to
> investigate the facts and develop the arguments both for and against granting
> benefits...."). One of the means available to an ALJ to supplement an inadequate
> medical record is to order a consultative examination, *i.e.,* "a physical or mental
> examination or test purchased for [a claimant] at [the Social Security
> Administration's] request and expense." 20 C.F.R. §§ 404.1519, 416.919.

*Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001). The ALJ's independent duty to develop

the record fully and fairly "extends to the represented as well as to the unrepresented claimant."

*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). However, "[a]n ALJ's duty to

develop the record further is triggered only when there is ambiguous evidence or when the record

is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453,

459-60 (9th Cir. 2001).

     In addition, the Ninth Circuit has held the following concerning the substantial evidence

2

standard:

> "We...will disturb the denial of benefits only if the decision 'contains legal error or is not supported by substantial evidence.' " *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted) (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). "Substantial evidence...is 'more than a mere scintilla,' " and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ⎯⎯ U.S. ⎯⎯, 139 S. Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

*Ford v. Saul*, 950 F.3d 1141, 1153–54 (9th Cir. 2020) (first ellipsis added).

Here, Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation of Plaintiff's chromosome abnormality, which Plaintiff alleges as causing "a mild to moderate developmental delay with a significant memory impairment." (ECF No. 14, p. 8). Here, the ALJ made no such finding regarding the inadequacy of the record. *See Tonapetyan*, 242 F.3d at 1150 (the ALJ's duty to develop the record is triggered if the ALJ finds the record is "inadequate to allow for the proper evaluation of the evidence."). Moreover, the evidence on record regarding Plaintiff's alleged cognitive deficits is sufficiently clear.

In finding Plaintiff's chromosome abnormality to be non-severe, the ALJ noted that "[w]hile her treatment records indicate this rare diagnosis would need to be monitored, there was no evidence of treatment or medication for this impairment." (A.R. 18 (citing A.R. 293-302, A.R. 332, A.R. 392, A.R. 414). For example, the ALJ cited to records from when Plaintiff was genetically tested as a teenager that do not indicate her diagnosis causes significant memory impairment. (*Id.* (citing A.R. 297 ["[Plaintiff] is a very interesting 14-year-old with severe obesity and probable mild to moderate learning problems . . . She is trisomic for the distal tip of 6p due to a familial translocation."]; A.R. 299 ["She has had a fairly minimal effect from this translocation but the most major effect, that of obesity, is serious.]; A.R. 300 [genetic medicine follow up neurologic examination "within normal limits for age"]; A.R. 300-1 ["[Plaintiff] has a tiny duplication of the distal end of 6p which has presented her relatively few problems with respect to her cognitive development. . . She also has psychological problems which are atypical for the family and maybe also easily attributed to a duplication of chromosome material. She is having panic attacks, underlying anxiety, and apparently some intermittent suicidal ideation . . . I suggested that the mother talk with [Plaintiff's] school counselor on an emergent basis and the

other avenues for mental health be explored."]). The ALJ also noted that Plaintiff graduated high school, although there was evidence of academic difficulties. (A.R. 18 (citing A.R. 231, 292)). Finally, the ALJ noted that Plaintiff testified at the hearing that she was not receiving any type of treatment for her chromosome abnormality. (A.R. 18).

In assessing Plaintiff's RFC, the ALJ discussed recent treatment notes where Plaintiff displayed normal cognitive and psychological abilities. (A.R. 23 (citing A.R. 340 [Plaintiff presented as "alert, oriented, cognitive function intact, cooperative with exam, good eye contact, judgment and insight good, mood/affect full range, no auditory or visual hallucinations, speech clear" on March 31, 2020]; A.R. 345 [Plaintiff's neurological functioning "alert and oriented" and "cognitive functioning intact" on March 16, 2023], A.R. 349 [same in March 2019])). The ALJ also observed that "there is no evidence of treatment by a licensed mental health practitioner during the period at issue." (A.R. 23).

Plaintiff does not point to any specific evidence that is ambiguous regarding the effects of Plaintiff's chromosome abnormality. Moreover, the ALJ's assessed RFC included several limitations related to Plaintiff's alleged cognitive and mental health impairments, including that Plaintiff be limited to "simple, routine, and repetitive tasks in low stress jobs which are jobs that are defined as goal oriented, and which do not have an assembly line, piece work, or numerical production quota pace, a job in which the individual is limited to occasional decision making, occasional changes of workplace setting, occasional changes to workplace routine, and a job in which she has only occasional contacts with supervisors, co-workers, and customers." (A.R. 21). Accordingly, the Court finds that the ALJ did not err by failing to obtain a psychological evaluation with intellectual testing. [2]

**B.     Unemployment Benefits**

Plaintiff also challenges the ALJ's decision to discredit Plaintiff's testimony that she is unable to work based on Plaintiff's receipt of unemployment benefits. (ECF No. 14, p. 8-9). Plaintiff argues that this finding was not supported by substantial evidence because the record does not establish whether Plaintiff also held herself out as available for full-time or part-time work. (*Id.*) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir.

---

[2] In light of this finding, the Court does not address the Commissioner's argument regarding waiver.

2008)).

At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since March 10, 2020. (A.R. 17). The ALJ specifically noted that:

> The record also indicates the claimant collected unemployment insurance in the second, third, and fourth quarter of 2020 as well as the first and second quarter of 2021 (9D). Although not dispositive, the collection of unemployment indicates a ready willing able to work. The fact that the claimant certified to one governmental agency that she was able to work in order to receive monetary benefits and is now certifying to another governmental agency that she is disabled in an effort to receive monetary benefits shows that the claimant believed herself to be capable of work, which is inconsistent with allegations of an inability to work full-time and shows that her symptoms are not as severe as their allegations would indicate. Nevertheless, in an attempt to provide the claimant the benefit of the doubt, the undersigned continues on to the next step in the sequential analysis.

(A.R. 18).

In *Carmickle*, the Ninth Circuit found that that an ALJ's credibility determination based on the receipt of unemployment benefits to be not supported by substantial evidence when "the record ... does not establish whether [plaintiff] held himself out for full-time or part-time work [as] [o]nly the former [i.e., full-time work] is inconsistent with [plaintiff's] disability allegations." *Carmickle*, 533 F.3d at 1161-62 (internal citations omitted). Here, Plaintiff testified at the hearing that she was looking for work although she also testified that she did not think that she could perform full-time work:

> Q. Okay. All right. Are you looking for work now?
> A. Yes.
> Q. And what work are you looking to do?
> A. I was trying to find the same work as I was doing before.
> Q. Did you want to do it on a full-time basis or a part-time basis?
> A. Honestly right now I was just trying to get either [,] whichever came first.
> Q. Okay. Do you feel you could [perform] full-time work doing the janitorial work?
> A. Honestly, I don't at this point.

(A.R. 35-36). Thus, Plaintiff's hearing testimony indicates that she was holding herself out for both part-time and full-time work. However, to the extent the ALJ erred by not explicitly citing this testimony, such error is harmless because the ALJ went on to resolve step one in Plaintiff's favor. *See Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (defining harmless error as such error that is "inconsequential to the ultimate nondisability determination").

Moreover, the ALJ provided other legally sufficient reasons, which Plaintiff has not

challenged, to discount Plaintiff's testimony that she is unable to work. As discussed above, the ALJ noted that Plaintiff's allegations as to her cognitive and mental health limitations lacked support from the medical record and conflicted with normal examination findings. When discussing Plaintiff's allegations of physical disability due to obesity, the ALJ noted that "the medical records did not indicate any special effects that [Plaintiff's] weight has on her functioning although she was encouraged to diet and exercise as well as work with a nutritionist." (A.R. 21 (citing A.R. 345)). Inconsistencies with the medical record and a lack of support from the medical record are sufficient bases to discount a Plaintiff's subjective testimony. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (noting that conflicts between testimony and objective medical evidence was a basis to discount a plaintiff's credibility); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Accordingly, the Court concludes that the ALJ's credibility determination was supported by substantial evidence.

## II.    CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is AFFIRMED. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:    **October 25, 2023**                    /s/ _Erica P. Grosjean_
                                                UNITED STATES MAGISTRATE JUDGE

6